## MEUER v. CHICAGO, M. & ST. P. RY. CO.

1. A special contract, made in the state of Wisconsin, between a railroad company and a shipper, for transporting a car load of live stock and

emigrant movables from a point in that state to a point in this state, is to be interpreted according to the law of the former state.

2.  In an action tried in this state, where the interpretation of such contract is involved, the courts of this state will not take judicial notice of the law of Wisconsin, but such law must be alleged and proven like any other fact in the case.

3.  In the absence of such proof, the law of that state will be presumed to be the same as the law of this state, and such contract will be interpreted in accordance with the law of this state.

4.  By the law of this state, a common carrier of property or passengers may limit his liability by an express contract signed by the parties, except as to gross negligence, fraud, or willful wrong of such carrier or its servants.

5.  A special contract for transporting a car load of live stock and emigrant movables, made between a railroad company and a shipper, in which it is stipulated that the shipper shall be entitled to pass upon the same train to care for, feed, and water his stock, and load and unload the same, at his "own risk of personal injury, from whatever cause," is a valid contract, and exonerates the railroad company from all liability for any injury to the shipper while a passenger upon such train, not caused by the gross negligence, fraud or willful wrong of the company or its servants.

6.  If, when acting under such contract, the shipper is injured while unloading his stock at the place of destination, by reason of the negligence of the railroad company or of its servants, not amounting to gross negligence, such railroad company is exonerated from liability for such injury.

7.  The shipper, while unloading his stock under such contract, is within the exemption clause of the contract, though the car has arrived at its destination, and the shipper has left the car for a short time, prior to the injury, and proceeded to an hotel, to get lanterns and assistants to aid him in unloading the car.

(Syllabus by the Court.  Opinion filed July 27, 1894.)

Appeal from circuit court, Day county.  Hon. J. O. AN-DREWS, Judge.

Action to recover damages for personal injuries alleged to have been caused by the negligence of defendant.  The plaintiff had judgment and defendant appeals.  Reversed.

The facts are stated in the opinion.

*John H. Perry,* (*H. H. Field,* of counsel), for appellant.

In absence of evidence to the contrary, the presumption is that the law of another state relative to a contract is the same as that in force in this state. 19 Am. E. Enc. Law, 47; Walsh v. Dart, 12 Wis. 635; Flota v. Mulhall, 72 Mo. 522; Nese v. Inc. Co., 55 Ia. 604; Shumway v. Leskey, 8 Pac. 12. The validity of the contract is determined by the law of the state where made. Steamship v. Ins. Co., 129 N. S. 397; Hazel v. Railway, N. W. 926; Hutchinson v. Camer, 2d. Ed. § 140; Lawson's contracts of carriers, § 211; Wheeler on Carriers, 183. Many decisions hold that the law of the state where the contract is to be finally performed governs. Pomeroy v. Ainsworth, 22 Barb. 118; Curtis v. Railroad, 74 N. Y. 116; Gray v. Jackson, 51 N. H. 9.

A railroad may make any reasonable contract with the shipper limiting its liability for the goods. MacNamara Carriers, 145; Hutchinson Carriers, § 233; Hodgman v. Railroad, 33 Law J. Q. B. 233; Robinson v. Railroad, 35 L. J. C. P. 123. When a shipper accompanies his goods, paying nothing, and at his own risk, the railroad is not liable to him for injuries received as such passenger. Johnson v. Railroad, 9 Insh. R. 108; Duff v. Railroad, 4 L. R. Inch. C. L. 178; Poucher v. Railroad, 49 N. Y. 263; Biccell v. Railroad, 25 N. Y. 442. As to a gratuitous passage the railway may relieve itself from liability through the negligence of itself or employes. Quimby v. Railroad, 150 Mass. 365; Griswold v. Railroad, 53 Conn. 371; Annas v. Railroad, 67 Wis. 46; Kinney v. Railroad, 32 N. J. Law, 407; Railroad v. Read, 37 Ill. 484; Bates v. Railroad, 147 Mass. 255; Hocmer v. Railroad, 31 N. E. 652; Holsopple v. Railroad, 86 N. Y. 275; Cragin v. Railroad, 51 N. Y. 61.

When a time is fixed by the legislature for holding a term of court, the judge cannot appoint another time and if he does so all proceedings taken therein are void. 12 Am. E. Enc. Law 296; Brumley v. State, 20 Ark. 77; Ex parte Osborn, 24 Ark. 479; Doss v. Waggoner, 3 Tex. 515; Ex parte Millington, 24 Kan. 214; Freeman Judg. B. d. Ed. 121; Meyers v. Mitchell,

46 N. W. 245; State v. Roberts, 8 Nev. 239; Gorzo v. State, 12 Tex. app. 261; Langhorne v. Waller, 76 Va. 213; Stovall v. Emerson, 20 Mo. app. 322; People v. Sullivan, 115 N. Y. 185; People v. Bradwell, 2 Cow. 445; Neal v. Shim, 4 S. W. 771; Hardin v. Trummer, 9 S. E. 342.

When a verdict is so excessive as to indicate passion or prejudice on the part of the jury it should not be sustained. Clapp v. Railroad, 19 Barb. 461; Lombard v. Railroad, 47 Ia. 494; Railroad v. Ware, 1 S. W. 493; Railroad v. Hall, 15 S. W. 108 Orleans v. Perry, 40 N. W. 417; Railroad v. Hughes, 87 Ill. 94; Brown v. Railroad, 26 Pac. 579. When the trial judge finds the verdict excessive he should grant a new trial. Railroad v. Montgomery, 26 Pac. 403; Id. v. Dwelle, 24 Pac. 500; Id v. Coon, 7 S. W. 492; Munnally v. Faliaferra, 18 S. W. 149; Railroad v. Ryan, 30 Pac 108; Id. v. Redeker, 12 S. W. 855; Nufred v. Railroad, 12 So. E. 512.

*Julian Bennett* and *W. S. Glass*, for respondent.

The law requires the utmost vigilance on the part of carriers of passengers. Dodge v. Steamship, 2 L. R. A. 83; Moore v. Railroad, 39 Ia. 491. Any negligence on their part is gross negligence. Hutchinson on Carriers, § 503; Railroad v. Derbey, 14 How. 468; The New World v. King, 16 How. 469. A person in charge of stock being shipped is a passenger for hire. Missouri v. Ivey, 9 S. W. 346; New York v. Lockwood, 17 Wall. 357. The public have an interest in the contract between the carrier and passenger which the individual cannot waive. Mann v. Prichard, 40 Vt. 326; Willis v. Grand Trunk, 62 Me. 488; Squire v. New York, 98 Mass. 239. The relation of passenger exists until the person carried has reached his destination and has left the depot or had reasonable time to do so. 2 Am. E. Enc. Law, 745; Railway v. Krouce, 300 St. 222; Imhoff v. Railroad, 20 Wis. 344. Mere general terms of exemption are not sufficient to release a carrier from liability for negligence. Maginn v. Dinsmore, 56 N. Y. 168; Mynard v. Railroad, 71 N. Y. 180; Nicholos v. Railroad, 89 N. Y. 370; Tanner v. Railway, 108 N. Y. 623;

Wescott v. Fargo, 61 N. Y. 543; Alexander v. Greene, 7 Hill, 533; New Jersey v. Bank, 6 How. 344; Black v. Goodrich, 55 Wis. 319; Hutchinson Carriers, § 261. The contract waiving liability for negligence of the carrier, its agents and employes, is void under the law of Wisconsin, where it was made. Grand City v. Railroad, 63 Wis. 93; Railway v. Boyd, 91 Ill. 271; Penn v. Fairchilds, 69 Ill. 263; Hole v. New Jersey, 15 Conn. 539.

Unless a verdict for damages is highly excessive and above the average amount usually awarded in similar cases, it should be sustained. Monson v. Railway, 8 N. Y. 436; Railway v. Smith, 1 S. W. 565; Jordon v. Railroad, 9 N.Y. 506; Griffith v. Clift, 11 Pac. 609; Fitch v. Railroad, 10 N. Y. 225; Howard v. Dove, 13 S. W. 665; Nodon v. White River Lum. Co., 43 N. W. 1135; Sellick v. Langdon, 13 N. Y. 858; Funston. v. Railway, 61 Ia. 452.

CORSON, P. J. In March, 1887, the plaintiff shipped from Avoca, Wis., a car load of live stock and emigrant movables over defendant's road, consigned to himself at Bristol, D. T. The car containing the freight arrived at Bristol, and the plaintiff, while removing the live stock from the car, was injured, to recover for which this action is brought. The live stock and movables were shipped under a special contract, by the terms of which the plaintiff was permitted to pass on the train to care for and look after his stock. The material parts of the contract, so far as they affect this case, are as follows:

"(Exhibit A.) Chicago, Milwaukee & St. Paul Railway. Live-Stock Contract. * * * Persons in charge of live stock will be passed on the train with, and to care of it, as follows: One man with two or three cars, two men with four or seven cars, three men with eight cars, which is the maximum number that will be passed for one owner. Passes will be furnished in manner provided on back of this contract, to persons, who, as above, may have been in charge of two or more

cars of stock. No return passes given on west-bound ship-
ments. No person will be passed with one car of live stock ex-
cept that one car of horses or mules or emigrant movables
containing live stock will entitle the owner or man in charge to
pass one way on the same train, to take care of it. * * * *
Such entry of persons in charge and certificate of billing agent
to that effect will be the authority of conductors to pass them
with the stock. All persons are thus passed only at their own
risk of personal injury from whatever cause. A. C. Bird, Gen-
eral Freight Agent.''

"* * * Received of Anton Meuer, one car live stock and
emg. mov. as per margin, to be delivered at Bristol, Dakota,
station at special rates, being $45,00 per car; which stock is to
be loaded and unloaded, watered and fed by said Anton Meuer,
or his agents. * * * The Chicago, Milwaukee & St. Paul
Railway Co., by D. Bohan, Agent. Anton Meuer, Shipper.''
Indorsement on back: "Parties actually in charge of and ac-
companying the within stock must write their own name in ink
here. [Signed] Anton Meuer."

The contract was introduced in evidence by the plaintiff.
At the close of the plaintiff's evidence, and again at the close
of all the evidence in the case, the defendant moved the
court to instruct the jury to return a verdict for the defendant
on the ground that, by the terms of the contract, the plaintiff
assumed all risk "of injury from whatever cause," and could
not, therefore, recover in this action. These motions were de-
nied, and exceptions duly taken.

The learned counsel for the appellant contend that, under
the terms of the contract signed by the plaintiff, he agreed to
assume all the risk of personal injury from whatever cause;
that such a contract was authorized by the laws of this state,
and was a legal, valid, and binding contract, exonerating the
defendant from all liability for personal injuries to the plain-
tiff, from whatever cause received. They further contend that
the contract, though made in Wisconsin, would nevertheless be

interpreted by the laws of this state, in the absence of evidence as to the laws of Wisconsin in relation to the contracts of common carriers, and that the law of Wisconsin will be presumed to be the same as the law of this state relating to such contracts. The contract in this case, having been made in Wisconsin, may be regarded as a contract of that state, and to be interpreted in accordance with the laws of that state. Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469; Hazel v. Railroad Co. (Iowa) 48 N. W. 926. This court, however, will not take judicial notice of the laws of another state. Such laws must be alleged and proven on the trial, the same as any other facts in the case. No such evidence appears from the record in the case, to have been given. In the absence of such evidence this court will presume that the law of Wisconsin as to the right of a common carrier to limit the liability of himself or servants is the same as the law of this state upon that subject. Sandmeyer v. Insurance Co. (S. D.) 50 N. W. 353. There is some conflict in the decisions of the different courts upon the question as to whether or not the court will presume that the law of another state is the same as the statute law of the state where the action is tried, but the weight of authority seems to support this view. In the case of Palmer v. Railroad Co., decided by the supreme court of California in the present year; and reported in 35 Pac. 630, the court says: "The cause, so far as can be determined from the record, was tried upon the theory that the law of California is applicable. There is no suggestion that the law of Missouri, where the contract for transportation was made, was put in evidence. Under such circumstances, we are not at liberty to assume as a fact that the state of Missouri has a special statute on the subject, but must presume as a question of law that the law of that state is the same as our own. Norris v. Harris, 15 Cal. 226; Hill v. Grigsby, 32 Cal. 56; Taylor v. Shew, 39 Cal. 540; Brown v. Gaslight Co., 58 Cal. 426; Marsters v. Lash, 61 Cal. 622; Shumway v. Leakey, 67 Cal. 458, 8 Pac. 12. Judged

by our own statute, and by the lawful limitation which defendant might and did embrace in its bill of lading, it was bound to transport to Albuquerque, and deliver to the Atlantic & Pacific, connecting road, within a reasonable time, plaintiff's goods." See, also, 19 Am. & Eng. Enc. Law, 47; Neese v. Insurance Co., 55 Iowa, 604, 8 N. W. 450; Walsh v. Dart, 12 Wis. 635; Hadley v. Gregory, 57 Iowa, 157, 10 N. W. 319.

The first question, then, to be determined is, what is the law of this state as to the right of a common carrier to limit his liability ? for the contract in this case must be interpreted by our law upon this subject. There is a direct conflict in the decisions of the various courts upon the question of the right of common carriers to limit their common-law liability for the negligence of themselves and their servants by special contracts. In Railroad Co. v. Lockwood, 17 Wall 357, the supreme court of the United States held that common carriers do not possess the power to limit their liability, even by express contract, for the negligence of themselves or their servants; and this view was affirmed in Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469. On the other hand, the court of appeals of New York, in a number of cases, has held that common carriers possess such power. This doctrine is clearly laid down in Bissell v. Railroad Co., 25 N. Y. 442, and affirmed by that court, after the dicision in Railroad Co. v. Lockwood, *supra*, in Mynard v. Railroad Co., 71 N. Y. 180. This court, however, is not called upon to decide between these conflicting opinions, as the Code of this state has settled the question within this jurisdiction. Hartwell v. Express Co., 5 Dak. 463, 41 N. W. 732; Hazel v. Railroad Co (Iowa), 48 N. W. 926; Kirby v. Telegraph Co. (S. D.) 55 N W. 759. The sections of the Code bearing upon this question constitute sections 3881-3888, Compiled Laws, and read as follows: "Every one who offers to the public to carry persons, property or messages, is a common carrier of whatever he thus offers to carry." 3886: "The obligations of a common car

rier cannot be limited by general notice on his part, but may be limited by special contract." 3887: "A common carrier cannot be exonerated by any agreement made in anticipation thereof, from liability for the gross negligence, fraud or willful wrong, of himself or his servants." 3888: "A passenger, consignor or consignee, by accepting a ticket, bill of lading or written contract for carriage, with a knowledge of its terms, assents to the rate of hire, the time, place and manner of delivery therein stated. But his assent to any other modification of the carrier's rights or obligations contained in such instrument can only be manifested by his signature to the same." By section 3886 it will be noticed that common carriers may, in this state limit their liability by special contract; and by section 3887 an exception is made in cases of "gross negligence, fraud, or willful wrong." It would seem, therefore, that, subject to the exceptions specified, a common carrier by the laws of this state, may, by special contract, limit his common law liability in all cases not included in the excepted cases. This case seems to have been tried, and the jury instructed, upon the theory that the defendant, notwithstanding the stipulations in the contract, was liable for the ordinary negligence of itself and servants, and the question of gross negligence is eliminated from the case. The record discloses the fact that the defendant's counsel requested the court to instruct the jury that there was no evidence of gross negligence, and it was refused, the court stating "that he did not submit the question of gross negligence to the jury, but simply the question of ordinary negligence." We shall assume therefore, for the purposes of this decision, that there was no evidence of gross negligence, fraud, or willful wrong on the part of the defendant or its servants, and that the verdict of the jury was based entirely upon the theory that the injury to the plaintiff was caused by the ordinary negligence of the defendant or its servants. Taking this view of the case, was the defendant entitled to have his motion for an instruction to the jury to find for the defendant, granted

at the close of the plaintiff's evidence? As before stated, the special contract was introduced in evidence by the plaintiff, and was therefore a part of the plaintiff's case. It appears from this contract between the parties that defendant, in consideration of the plaintiff's stipulations to load and unload the car, and feed and water the live stock on the trip, agreed to transport the car of stock and household movables at a reduced rate, and to pass the plaintiff on the same train, to care for and look after the live stock, but at plaintiff's "own risk of personal injury from whatever cause."

Assuming that plaintiff's injuries occurred while such passenger upon the train, and that they occurred from the ordinary negligence of the defendant or its servants, the limitation in the contract would seem to be such a one as is permitted by the statute, and would exonerate the defendant from liability for the injuries plaintiff sustained, the contract being a special contract, and signed by the respective parties, as required by the statute. The terms of the contract are clearly stated. There is no ambiguity in its stipulations, and the intention of the parties is clearly ascertainable from the terms of the contract. The plaintiff was, by the terms of the contract, to be carried upon the same train with his live stock and movables, without extra charge, to care for and feed and water his stock; but at his own 'risk of personal injury from whatever cause." This contract the law permitted the parties to make. Section 3881 defines who are common carriers, and section 3886, in the same chapter, provides "that the obligations of a common carrier * * * may be limited by special contract." And section 3887 uses the same general term, "a common carrier," etc. Interpreting the contract by the law, it is difficult to perceive any valid reason for holding the defendant liable for plaintiff's injury. The contract, as we have seen, is one which the law permits the common carrier to make, and by its terms it clearly exonerates the defendant from liability for injuries caused by

the ordinary negligence of the defendant. or its servants. The
motion, therefore, should have been granted. The learned
counsel for respondent contend that under the law of this state
the contract is void. It is not claimed that the legislation of
this state is not within the proper exercise of the legislative
power, or is in violation of the organic act or the state consti-
tution. But it is contended that under the common law a com-
mon carrier of passengers is required to exercise the utmost dili-
gence and the highest degree of care and prudence in transfer-
ring passengers from one place to another by steam power,
and that "there has never been any attempt to relax the rule
requiring the utmost vigilance by the carriers of passengers in
operating by this mode of conveyance." The requirement in
this case being the most exact that the law imposes, no matter
what the relation may be, any failure or omission of the person
upon whom the duty rests is negligence, and this negligence
is not subject to division into degrees; hence the courts hold
that any negligence of a carrier of passengers is gross negli-
gence. The counsel, after further argument, concludes as fol-
lows: "We therefore conclude, in view of the law as estab-
lished by the judgments of the courts placing upon the car-
riers of persons the responsibility of exercising the greatest
degree of care and vigilance in the conveyance of human be-
ings, that section 3887 of the Compiled Law does not relieve
from responsibility the carriers of persons in cases where neg-
ligence is shown, even though the carrier has a pretended re-
lease from liability in the form of a special contract. That,
while the section apparently applies to common carriers in
general, it must be limited in its operation to carriers other
than those who engage in the transportation of persons.
* * *." While it is true that the utmost care is required on
the part of the carrier of passengers, and that such carrier is
ordinarily liable for negligence, whether gross, ordinary, or
slight, still there may be in fact degrees of negligence in the
management of its business by itself or its servants; and it is

upon this theory that the legislature has deemed it proper to permit such carriers to limit its liability for ordinary or slight negligence, when, under the law, it would ordinarily be held for injuries to persons caused thereby. The lawmaking power might properly permit special contracts exonerating such carriers from liability, when injury is caused to a person by ordinary or slight negligence, or even by gross negligence, if it deemed it proper. In New York, as we have seen, and other states, such contracts are permitted, and held valid, even without the aid of a statute. We are unable to discover any reason for holding that the lawmaking power may not make any provision governing the liability of common carriers, and authorizing them to limit their liability as it may deem proper.

It is further contended that the contract in this case is invalid, under the provisions of section 3578, Comp. Laws, which reads as follows: "All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." But the contract in this case is not a contract to violate any express law. It cannot be said that a contract permitted and sanctioned by express law is a contract to violate the law. If we are correct, the sections of the statute relating to common carriers permits common carriers of passengers as well as common carriers of property to make the contract in question, subject, of course, to the exceptions contained in the law. The argument of counsel would have much more weight as applied to carriers of freight than as applied to the carriers of passengers, as carriers of freight at common law were absolute insurers of the safe delivery of the property intrusted to them, except where the loss occurred "by the act of God, or the public enemy, or by their own decay from inherent infirmity, or by the fault of the owner thereof." Further exceptions are made in the carrying of live stock, not material now to be stated. If

therefore, the contention of counsel is correct, the statute could have no effect, as there would be no class of carriers to which it would apply.    We are of the opinion that the statute does apply to carriers of passengers as well as to carriers of freight, and we cannot assent to the contention of counsel for respondent that the contract in this case is void.

The counsel further contend that, as the stipulation in the contract is general, and does not specifically limit the liability of the defendant to the negligence of itself or servants, such negligence is not included; in other words, the language of the stipulation, "risk of personal injury from any cause," does not include injury caused by the negligence of the defendant or its servants.    There is force in this contention, and it has some support from the New York decisions.    The doctrine is thus stated in Mynard v. Railroad Co., 71 N. Y. 180:    "When general words may operate without including the negligence of the carrier or his servants, it will not be presumed that it was intended to include it."    But this doctrine has generally been applied to contracts by carriers of freight.    And even in this class of cases, when there is nothing in the contract upon which the general words can operate, unless the negligence of the defendant or his servants is included, such negligence is included in the general words, "for whatever cause."    This doctrine is illustrated in Cragin v. Railroad Co., 51 N. Y. 61, and Holsapple v. Railroad Co., 86 N. Y. 275.    In the former case the court says:    "In this case the plaintiffs assumed and agreed to take the risk of injuries to the hogs in consequence of heat. Effect should be given to this stipulation.    The parties must be held to have meant something by it.    In consideration that the plaintiff's would assume and take certain risks, which would otherwise devolve upon the defendant, it agreed to carry at a reduced rate.    If it be held that this stipulation simply exempts the defendant from liability for injuries to the hogs from heat without any fault on his part, then it gets nothing; for in such case without the stipulation, it would not be responsible.

Force and effect can be given to this stipulation only by hold-
ing that it was intended to exempt the defendant from negli-
gence, in consequence of which the hogs died from heat.    The
judge, at the trial, however, entirely ignored this special
contract, and put the case to the jury upon the defendant's
common-law responsibility,  charging that it was liable if they
found it guilty of negligence in the transportation of the hogs;
and he refused to the defendant any benefit whatever from the
special contract.    In this I cannot doubt the learned judge
erred."    In the latter case the court says:   "The doctrine of
Mynard v. Railroad Co., 71 N. Y. 180, is decisive upon this
question.    It was there held that, where general words, limit-
ing the liability of a carrier, may operate without including his
negligence or that of his servants, such negligence will not be
within the exemption of the agreement.    To this extent, at
least, we all concur.    However broad or general may be the
language of the contract which does not specifically and in ex-
press terms release the carrier from the consequences of his
own negligence, it will not effect such release if the general
words may operate without including such negligence.    That
is the case here.    The precise injury might have occurred
which actually happened without fault or negligence on the
part of the carrier.   *   *   *   It is in this respect that the pres-
ent case differs from that of Cragin v. Railroad Co., 51 N. Y.
61.    In that case the injury resulted from the vitality of the
animals, and their inherent nature and characteristics.    For
such injury the carrier was not liable at common law, and the
general words of release and exemption could not operate at
all, unless upon the negligence of the defendant.    The case
was decided upon that precise ground."    In Kenney v. Rail-
road Co., 125 N. Y. 422, 26 N. E. 626, the rule was extended to
a contract for the carriage of passengers,  but under special
circumstances.    It was held in that case that the general clause
in question was capable of another construction, as applied to
the facts in that case, and the same rule was applied as in the

case of contracts for the carrying of freight. In this case there are no special circumstances taking the case out of the general rule that in the case of a passenger the only basis of the carrier's liability is negligence, and such a stipulation in the contract would be deprived of all operation unless it would cover negligence. A carrier of passengers is not an insurer of the safety of the passengers as is a carrier of goods, for the safe delivery of the goods. A carrier of passengers is only liable for negligence, and hence the stipulation in the contract has nothing to operate upon unless negligence is included.

In the discussion thus far we have assumed that the plaintiff was injured while a passenger upon defendant's road. It is contended, however, by respondent, that he had ceased to be a passenger when the injury to him occurred, he having arrived at Bristol, the place of his destination, and left the car. It appears from the evidence that after plaintiff's car was side-tracked at the station, the plaintiff went to an hotel in Bristol to get lanterns and assistants to aid him in unloading his car; that he was absent a short time,—how long does not appear, but evidently only for a short period,—when he returned, and proceeded to unload his stock. While it may be true, as contended by respondent, that when an ordinary passenger arrives at his destination, and leaves the train and the depot, his relation to the carrier as passenger ceases, but, when one sustains to the carrier the relation sustained by the plaintiff in this case, we think a different rules applies. Being required by his contract to load and unload his stock, we are of the opinion that by the terms of the contract it must be held to extend to the final unloading of the stock. The stipulation is not limited, but provides that "all persons are thus passed only at their own risk of personal injury, from whatever cause." This would seem to include loading and unloading as well as transportation in the train. The plaintiff was unloading the car under the terms of the contract, when the injury occurred. To hold that he was acting under the contract in loading the stock,

but still absolved from the stipulations of the contract as to defendant's liability for injuries to him, would be giving to the contract a construction not warranted by its terms. The plaintiff was permitted to go on the train with, and to take care of, his stock; and he was in and about the car for that purpose when injured. In Poucher v. Railroad Co., 49 N. Y. 263, the plaintiff was injured before the train started from the depot, by a stick of wood thrown from the tender, and the court held that defendant was exempt from liability under its contract. In that case the court said: "The injury complained of was sustained by plaintiff while he was on the defendant's premises, moving about the train on which his animals were laden, for the purpose of taking care of them, and engaged in the performance of that duty. His only business there was to take charge of the stock in pursuance of the terms of the contract. The train was about starting, and he was to go in it according to the terms of the contract, being provided with a free pass for that purpose. The contract provided that he should go or send some person on the same train with the stock, to take charge of it, who should be carried free of charge; and that such person so riding free should take all the risk of personal injury from whatever cause, whether of negligence of the defendant or its agent or otherwise. We do not think it necessary, to bring the plaintiff within the operation of this stipulation, that he should have been actually riding at the time of his injury. The train had been formed, and was about to start. The plaintiff was there, under the contract, as a passenger, furnished with a pass, entitling him to ride free, and coming from the performance of the duties contemplated by his contract." We think that by a fair and reasonable construction of the contract the plaintiff, while unloading his stock, was within the terms of his contract, whether he was called a passenger or not. He was doing what the contract stipulated he should do,—unloading his stock under the contract; and defendant's exemption from liability continued so long as the plaintiff continued to act

under the contract, or the contract was in force. It was evidently the intention of the parties in entering into the contract that the plaintiff was to assume all risk for personal injury from whatever cause, until the car was unloaded as provided in the contract.

There were a number of other questions discussed in the briefs of counsel and in the oral arguments, but, as these questions may not arise on another trial, we do not deem it necessary to discuss them. Our conclusion is that, under the contract construed by the law of this state and the record on this appeal, the motion of defendant that the court direct a verdict in its favor should have been granted. The judgment of the court below is therefore reversed, and a new trial is ordered.

KELLAM, J. I express no opinion upon the independent proposition, that the statutes of a foreign state will be presumed to be the same as those of the forum. I concur, however, in the decision of the case. It is the duty of courts to sustain as valid and binding the deliberate agreement of parties, until some reason is shown against it. Assuming that in the absence of evidence, the courts of this state may not know what the statute law of Wisconsin is, or indulge any presumptions in regard to it, it still remains a fact that the laws of Wisconsin may be such as to allow or authorize a contract like this, and the court ought to treat the contract as valid, until it is affirmatively shown that the laws of that state do not allow it.