## MORRIS V. HUBBARD, Sheriff.

1. Under allegations setting forth a lien on property under a written contract, a party cannot prove a lien contracted for by parol.

2. Where items contracted for under a written contract were alone admissible in evidence, and the supreme court cannot, by an inspection of the record, eliminate irrelevant evidence of items contracted for by parol, a new trial will be granted.

3. The oral evidence of the clerk is not competent to contradict the recitals of an execution respecting the time of the rendition of the judgment.

4. In the absence of proof, the laws of another state are presumed to be the same as those of South Dakota.

(Opinion filed Nov. 9, 1897.)

Appeal from circuit court, Minnehaha county.    Hon. J. W. JONES, Judge.

Claim and delivery.    Plaintiff had judgment and defendant appeals.    Reversed.

The facts are stated in the opinion.

*Hosmer H. Keith,* for appellant.

A judgment in writing signed by the court is entered by lodging it in the hands of the clerk.    The filing is the entry. Copying it into the judgment book is merely a ministerial act and is not essential to the validity of the judgment, or an execution issued thereon.    Black on Judgments, §§ 106, 109, 110; Bank v. Raynor, 61 Cal. 145; Fountaine v. Hudson, 5 S. W. 692; Gunn v. Plant, 94 U. S. 665; Lowenstein v. Curruth, 28 S. W. 421; Fish v. Emerson, 44 N. Y. 378.

*Powers & Carland,* for respondent.

The testimony of the clerk was proper for the purpose of showing that the judgment was not entered in the judgment book until after the execution was issued.    Hunter v. Cleveland etc. Stove Co., 31 Minn. 505.

HANEY J.    In September, 1894, J. E. Bruce, Jr., and W. L. Bruce, co-partners as Bruce Bros., at Wichita, Kan.; gave

plaintiff a bill of sale whereby they conveyed to him certain race horses and other personal property, and guaranteed they were the owners thereof, and that the same were free and clear of any incumbrance. It was signed Bruce Bros., by W. J. Bruce, their attorney in fact, and W. J. Bruce. At the same time, and as part of the same transaction, plaintiff, Bruce Bros., and W. J. Bruce entered into a written contract wherein it is agreed that the bill of sale was executed to secure the repayment of a loan of $929.08 furnished Bruce Bros. by the plaintiff; that the personal property therein described shall be held as security for the repayment of such loan, the sum so loaned to bear interest from date at the rate of 12 per cent. per annum, and to be paid on or before one year from the date thereof; that upon repayment of the loan, with interest, plaintiff shall return all of the property to Bruce Bros. "It is further agreed that such of the horses above mentioned as shall be deemed desirable and suitable for that purpose, and shall be mutually agreed upon by the said John S. Morris and W. J. Bruce, shall be entered upon such circuits, courses and race tracks as the said parties may agree upon, for the seasons of 1894–1895, in the name of 'The Cherokee Stock Farm'; the said W. J. Bruce to have the entire charge and management of the said horses upon the circuits, courses and race tracks so entered, or, in the case of death or sickness of W. J. Bruce, by some competent trainer to be selected by the said Morris. It is further agreed that until payment of said sum of money and interest, and the termination of the agreement, all of said horses shall be kept upon the said Cherokee Stock Farm, near the town of Caney, Kansas; the said W. J. Bruce, however, to have the charge and management of said property upon said stock farm. The entrance fee in all races for the seasons of 1894–1895 shall be paid by the said Bruce Brothers, or advanced by said Cherokee Stock Farm, and taken out of the purses, or refunded by Bruce Brothers, and any sum advanced in this way, or to reinstate, shall constitute a lien upon said stock, until repaid; and

all purses and premiums earned by said horses shall belong to the said Bruce Brothers, but shall be applied upon the said sum due the said John S. Morris." This contract was signed in the same manner as the bill of sale. It is alleged and proved that the statutes of Kansas (Gen. St. Chap. 68) contain the following provisions:

"Sec. 9. Every mortgage, or conveyance intended to operate as a mortgage, of personal property, which shall not be accompanied by immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be forthwith deposited in the office of the register of deeds, in the county where the property shall then be situated, or, if the mortgagor be a resident of this state, then of the county of which he shall at the time be a resident."

"Sec. 15. In the absence of stipulations to the' contrary, the mortgagee of personal property shall have a legal title thereto, and the right of possession."

It is conceded that the bill of sale and contract constitute a mortgage, and, as neither was filed for record, plaintiff's lien depends upon an immediate delivery and continued change of possession. It will be observed that the contract hypothecates the property for the performance of but two obligations, namely, the repayment of the loan, with interest, and any sums advanced by the Cherokee Stock Farm as entrance fees, or to reinstate, during the season of 1894–95. It is alleged in the complaint "that the debt to secure which the said mortgage was given is due and unpaid, and the amount now due under said mortgage is $3,000." This allegation is denied by the answer, and defendant introduced evidence tending to show that there was nothing due according to the terms of the contract. The jury found the amount due plaintiff to be $1,700.

Plaintiff was permitted to testify, over defendant's objection, to a verbal agreement between plaintiff and W. J. Bruce

whereby the latter was to receive $20 per month for the care of the stock, and to sundry sums advanced by plaintiff for purposes not specified in the written contract. It is doubtless true that, if plaintiff was in possession of the property, he might have a lien thereon for such sums as were agreed upon between himself and its owners, but he does not allege that the property was pleged to secure the performance of a verbal contract. He expressly alleges the making of the bill of sale and written contract, that they constitute a mortgage, and that the amount due under such mortgage is $3,000. Under the allegations of the complaint, it was clearly irrelevant to show any items of indebtedness not included in the contract. Defendant was not notified of any claim upon the property not embraced in the mortgage, and plaintiff's evidence should have been restricted to the allegations of his complaint. As it is impossible, from an inspection of the record before us, to eliminate this irrelevant evidence, and ascertain what, if any, sum provided for by the mortgage was due to plaintiff, the judgement must be reversed, and a new trial ordered.

Questions likely to arise upon a new trial will be briefly noticed: Defendant, as sheriff, justifies taking the property under an execution issued upon a judgment by confession in favor of W. H. H. Beadle against Bruce Bros. and W. J. Bruce. The statement and order for judgment comply with the requirements of the statute. An execution cannot issue until after judgment is entered by the clerk, but the oral evidence of the clerk will be incompetent, if properly objected to, to contradict the recitals of the execution. Comp. Laws, § 5538; Locke v, Hubbard (9 S. D. 364) 69 N. W. 590. The law of a sister state must be alleged and proven, like any other fact. In the absence of such proof, the law of the sister state will be presumed to be the same as the law of this state. Sandmeyer v. Insurance Co., 2 S. D. 346, 50 N. W. 353; Meuer v. Railway Co., 5 S. D. 568, 59 N. W. 945. When the contract creating plaintiff's lien was executed, we think, such contracts were not unlawful

in this state. Chapter 155, Laws 1893. The issues raised by the pleadings concerning the immediate and continued change of possession will doubtless be submitted under proper instructions, and we refrain from expressing any opinion upon the weight of the evidence contained in the present record. The judgment is reversed, and a new trial ordered.