ment in favor of the plaintiff for the amount paid by him to defendant for instruction, and in addition thereto plaintiff's expenses from Seattle, Wash., his place of residence, to Garden City. Clearly there is no foundation for the allowance of this last item. There is no claim that plaintiff was induced to seek the defendant's school by any false representations, and payment of plaintiff's traveling expenses from his residence to defendant's school is not a proper element of damages for a breach of its contract.

[3] I am also of the opinion that the plaintiff failed to prove any breach of contract on the part of defendant. It appears that the plaintiff in December voluntarily ceased taking lessons and worked in defendant's factory at wages, until he again resumed lessons in June, 1915. He admits that after he took his last lesson on July 29, 1915, although the particular machine upon which he had been taking lessons, called by him the "school machine," was broken, the defendant had another machine running "in fine shape," but that he never asked for a lesson to be given him on that machine, and was never told that he could receive lessons thereon; his reason being that "I did not want lessons on that machine." He also testified that, although he was frequently at the field where lessons were given, he did not make himself known to any person there, or ask for lessons. On November 22, 1915, plaintiff was notified by letter from defendant that he (plaintiff) had received 27 lessons and that he was entitled to 33 more, and that the defendant was ready to give those "at any time, weather conditions permitting." Plaintiff says he visited defendant's school several times after the receipt of this letter, and says that they had no machine there. This evidently refers to what he termed the "school machine," as it is not disputed that the defendant had a high power machine there, and, as before stated, plaintiff did not ask for nor was instruction refused him upon that machine. For all that now appears in the record the defendant was and has been ready ever since July 29, 1915, to give plaintiff lessons at any time he might within reason apply.

Judgment reversed, and new trial ordered, with $30 costs to appellant to abide the event. All concur.

---

### LEE v. ERIE R. CO.

(Supreme Court, Appellate Division, Third Department. May 3, 1916.)

1. CARRIERS ⬾88—FREIGHT IN CARLOAD LOT—DUTY TO DELIVER ON SIDING.
   A contract for transportation of a carload obliges the carrier, if required, to place the car on a private siding for unloading.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 280–289½, 319–321; Dec. Dig. ⬾88.]

2. CARRIERS ⬾100(1)—DEMURRAGE CHARGES—TIME OF DEMAND.
   The carrier cannot insist on payment of a demurrage charge, before completing delivery by placing the car, as required, on a private siding.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 427–430, 432, 433; Dec. Dig. ⬾100(1).]

---

⬾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. CARRIERS ☞100(1)—DELIVERY OF CAR ON SIDING—WAIVER—STATEMENT OF CONSIGNEE—DEMURRAGE CHARGES.

The statement of the consignee, when the carrier told him that, unless an excessive demurrage charge was paid, the car would not be placed on a private siding, necessary to complete delivery, that the charge could not be made "on a car that had not been placed," was not equivalent to a statement that, even if it placed the car, he would not pay the lawful charge thereon.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 427–430, 432, 433; Dec. Dig. ☞100(1).]

Kellogg, P. J., dissenting.

Appeal from Trial Term, Chemung County.

Action by William E. Lee against the Erie Railroad Company. From a judgment on a decision for plaintiff, after a trial without a jury, defendant appeals. Affirmed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Stanchfield, Lovell, Falck & Sayles, of Elmira (Henry B. Collin, of Elmira, of counsel), for appellant.

Thomas M. Losie, of Elmira, for respondent.

COCHRANE, J. The defendant has been held liable for converting a carload of lath belonging to the plaintiff. The controversy grows out of the application of certain car service rules for demurrage, duly promulgated and rendered effective according to law. The carload in question originated in the state of New Hampshire, and was consigned to William G. Barker, but was intended for the plaintiff, and its destination was Elmira, N. Y. It reached the defendant's yard in Elmira on the morning of August 27, 1906. Plaintiff had a private track, as lessee thereof, connecting with the defendant's tracks at Elmira. The plaintiff not being the consignee, the defendant could not place the car on his private track until it had satisfied itself that the car was in fact intended for him and that he was willing to accept the same. Immediately on its arrival, and in the forenoon of said August 27th, the defendant mailed to the plaintiff a postal card, informing him of the arrival of the car, and stating the freight charges to be $64.60, and bearing on its face the following printed matter:

"Car service in accordance with rules of the Car Service Association will be applied."

The plaintiff received said postal card in the afternoon of the same day, but did nothing in reference thereto until the afternoon of August 30th, when he called at the freight office of the defendant, paid the freight, and took a receipt therefor. He then directed the cashier, to whom he made the payment, to have the car placed on his track, and the cashier thereupon immediately gave instructions to have it so placed. At that time the car stood opposite the passenger station, but in a position not accessible for unloading. The defendant did not then, nor at any time thereafter, place the car on the plaintiff's track.

[1, 2] It was claimed by the defendant at the trial, and is now claimed, that at the time of the payment of the freight there was,

under the car service rules in force, a charge of $1, which had accrued for demurrage between the time of the arrival of the car at the Elmira yard of the defendant and the time when the plaintiff paid the freight thereon, and for the purposes of this appeal it will be assumed that such claim is tenable. The trial justice, however, has found on conflicting evidence that nothing was said when the freight was paid about a demurrage charge, and that the defendant then agreed to place the car on the plaintiff's track. This it failed to do. It has also been found by the trial justice that on the following day the defendant demanded $3 demurrage, and notified the plaintiff that it would not place the car on his track until such demurrage was paid. The plaintiff testified that not a word had been said prior to that about demurrage in any amount, and that he then told the defendant's agent that he "did not know how he got a charge of $3 demurrage on a car that had not been placed," and that he refused to pay the demurrage. If the car had been placed on the plaintiff's track on the previous day, as the defendant had promised, not more than $2 demurrage could have been demanded when the defendant made its demand of $3 on August 31st.

The failure to place the car on the plaintiff's track on August 30th, when the freight was paid, was not the fault of the latter. When, therefore, on August 31st, the defendant demanded $3 for demurrage, there was only in fact $1 due, and the defendant was making an unlawful and excessive demand. Its refusal to deliver the car on the track of the plaintiff, except on compliance with its unlawful and excessive demand for demurrage charges, constituted a conversion of the plaintiff's property. It was a part of the implied contract duty of the defendant to place this car on the plaintiff's private track, and until it did so it had not performed its contract, and no freight or demurrage charges, although previously earned, were collectable. The contract of transportation by a common carrier includes placing the cars conveniently for loading and unloading. The incidental consignee can require the car to be placed at a convenient point for unloading and a reasonable opportunity therefor. When the consignee, as in this case, has his own track, and requires the car to be placed thereon for unloading, it is the duty of the transportation company to comply with his requirement. This was not done in the present case, nor was the car ever in a position where it could be conveniently unloaded. In New York Central & Hudson River Railroad Company v. General Electric Company, 167 App. Div. 726, at page 732, 153 N. Y. Supp. 478, at page 482, it was said by this court, speaking through Mr. Justice Woodward:

"We believe it may be laid down broadly that transportation by railroad of carload lots, under present day conditions, requires the convenient placing of the car for loading, and an equally convenient placing of the car for unloading, and that the mere question of whether the tracks are upon the property of the shipper or upon the right of way of the transportation company is of no consequence upon this point. Primarily it is the duty of the transportation company to afford sidings, and a convenient place of loading or unloading, and a proper placing of the cars. If the shipper furnishes the sidings, it does not relieve the transportation corporation of the duty of conveniently placing the cars."

The contract obligation of the defendant, therefore, and the express directions of the plaintiff, required the defendant to place this car on the plaintiff's private track on August 30th, when the plaintiff signified that the car was intended for him and directed that it be placed on his track. Nothing in the car service rules appearing in the record changes this contract obligation of the defendant. And assuming, as we do, the correctness of the defendant's contention that $1 demurrage had at that time accrued, the defendant could not insist on its payment, or enforce its lien therefor, until it had performed its contract by depositing on the track of the plaintiff the car in question, which until so deposited had not fully arrived at its destination.

[3] The defendant now urges that the plaintiff did not at the time place his refusal to pay the demurrage on the ground that the car had not been placed on his track, but that his real attitude was that he would not under any circumstances pay any demurrage charges, because the defendant was not entitled to make the same. The version of the transaction as given by the plaintiff, and which has been accepted by the trial justice, does not justify this contention of the defendant. On August 30th, when the plaintiff paid the freight, he gave instructions that the car should be placed on his track, which the defendant agreed to do. Nothing was then said about demurrage, nor until the following day, when the defendant informed the plaintiff that, unless he paid more than the defendant had a right to demand, the car would not be placed on his track. The plaintiff then seems to have placed his refusal to pay on the specific ground that the charge for demurrage as made by the defendant could not be made "on a car that had not been placed." According to his testimony, that was substantially all that was said between the parties. Whatever may have been in his mind, or whatever his views may have been on the subject, he said nothing to mislead the defendant into believing that, even if it placed the car on his track, he would not pay the lawful charge thereon. The trial justice has not found, nor do we think it could fairly be found from the evidence, that the plaintiff waived the placing of the car on his track and the complete performance by the defendant of its contract obligations before it could demand payment of a proper charge for demurrage. The mistake originated with the defendant, and seems never to have been corrected by it.

The judgment should be affirmed, with costs. All concur, except KELLOGG, P. J., who dissents, and LYON, J., not voting.