PILLSBURY FLOUR MILLS COMPANY, Plaintiff, *v.* ERIE RAILROAD COMPANY, Defendant.

Supreme Court, New York County, June 24, 1926.

Carriers — damage to goods in transit — destination under bill of lading " for Export Dock D Weehawken N. J. Ltge free Hold for orders " was at dock and not at distributing yards — bill of lading cannot be construed as imposing obligation on plaintiff to take delivery approximately five miles from water front —" arrival notice " sent shipper when goods reached distributing yards did not change defendant's liability from carrier to warehouseman under bill of lading — plaintiff entitled to recover for value of shipment destroyed by fire while goods were in defendant's cars at dock — provision in lease to plaintiff of dock space did not relieve defendant from liability.

A bill of lading, under which plaintiff shipped a consignment of flour, reciting " Route: G. L. Tran. Corp. c /o Erie for Export Dock D Weehawken N. J. Ltge free Hold for orders " required that the defendant carrier place the cars conveying the goods alongside plaintiff's leased space on Dock D, and imposed no obligation on plaintiff to take delivery of the flour at a distributing point approximately five miles from the water front, particularly where the freight paid covered the obligation of the carrier actually to place the goods on lighters and transport them to shipboard.

Therefore, an " arrival notice " sent plaintiff when the goods reached defendant's distributing yards did not change the liability of the defendant for loss of the goods by fire while in defendant's cars at the dock from that of carrier to warehouseman, under the provisions of the bill of lading providing in effect that the carrier's liability shall be that of warehouseman only for loss caused by fire occurring after forty-eight hours after notice of the arrival of the goods at the point of destination or at port of export has been sent or given.

Under the bill of lading an " arrival notice " sufficient to change the liability from that of carrier to that of warehouseman, cannot be sent until the goods actually have arrived at the destination.

Nor is defendant released from liability by a clause in the lease of the dock space, by which the plaintiff assumed risk of loss by fire " on or about said leased premises arising out of the condition, use or location of the said leased premises or the operation, maintenance or existence of the railroad," for plaintiff's goods were not " on or about said leased premises " at the time they were destroyed, but were in the defendant's cars outside of the leased premises; further, there was no proof that the fire arose " out of the condition, use or location of the said leased premises " or that it arose out of the " operation, maintenance or existence of the railroad."

ACTION against carrier to recover for loss of goods by fire.

*Burlingham, Veeder, Masten & Fearey* [*Everett Masten* and *Eugene Underwood, Jr.*, of counsel], for the plaintiff.

*Davis, Polk, Wardwell, Gardiner & Reed* [*Theodore Kiendl, Ralph M. Carson* and *George M. Skinner*, of counsel], for the defendant.

PROSKAUER, J.   Plaintiff shipped fourteen carloads of flour from Minneapolis under bills of lading reading:

" Destination:  New York, N. Y.
" Route:   G. L. Tran. Corp. c/o Erie for Export
            Dock D Weehawken N. J. Ltge free
            Hold for orders."

The cars arrived on October 30, 1921, at Croxton Yard, Jersey City, the end of defendant's line haul, where all east-bound trains were broken up and distributed.   On October 31, 1921, defendant sent plaintiff an " arrival notice " stating: " The Property described is ready for Delivery by the Erie Railroad Co., New York Terminal  *  *  *  Consignee and Address  *  *  *  Ord Pills Flr Mills Co N. Y.  Ntfy Same at 124 X Prod Exch N. Y. at same hold for orders at Dk D Wken N J Ltge free for export."   By the time this notice was received the cars had in fact reached the Weehawken yard (four and three-fifths miles from Croxton).   On November third they were placed on tracks alongside certain space on dock D leased to plaintiff by defendant.   That night they were destroyed by fire without fault of either party.

The bill of lading provides:

" Sec. 1. For loss, damage or delay caused by fire occurring after 48 hours (exclusive of legal holidays) after notice of the arrival of the property at destination or at port of export (if intended for export) has been duly sent or given, the carrier's liability shall be that of warehouseman only."

" Sec. 5. Property not removed by the party entitled to receive it within 48 hours (exclusive of legal holidays) after notice of its arrival has been duly sent or given may be kept in car, depot, or

place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only."

Defendant denies liability on the ground that under the provisions of the bills of lading and the notice of arrival its liability had changed from that of carrier to warehouseman.

The notice of arrival could not properly be given to transmute the carrier's liability into that of a warehouseman when the goods arrived at Croxton. In *Bolles* v. *Lehigh Valley R. Co.* (159 Fed. 694), Lacombe, J., writes of the forty-eight hour clause (at p. 695): " This clause, however, by its very terms, applies only when the property has reached its destination. The hay in question had not reached such destination when it arrived at the rail terminal of the defendant in Jersey City. The contract between the parties expressly provided that the carrier should transport it to ship's side within lighterage limits of the port of New York, and should hold it during the 60 days awaiting designation of the ship."

In *Devato* v. *823 Barrels of Plumbago* (20 Fed. 510), where the consignment was to the " Port of New York," Judge Addison Brown says (at p. 515): " It does not follow, however, that a delivery of cargo is necessarily a good delivery because within the legal limits of the port. Such is not the meaning or intention of the bill of lading. No one would seriously contend that under a bill of lading like this goods consigned to a merchant in New York City could be lawfully delivered at Spuyten Duyvel, some 13 miles above the Battery, at the mere option of the captain, because Spuyten Duyvel is within the geographical limits of the city and port of New York, or at Throg's Neck, or at Sandy Hook, because those places are also within the legal limits of the port."

In *Houston & T. C. R. R. Co.* v. *Hill* (60 Tex. Civ. App. 214; 128 S. W. 445) mules were consigned to Fort Worth. The proof was that it was customary to deliver live stock at a particular point in Fort Worth; it was held that the carrier's liability continued until arrival at this point.

In *Missouri Pacific R. Co.* v. *Haynes & Co.* (72 Tex. 175, 179), where the railroad had assumed the duty of unloading at a compress platform, it was held that the railroad was liable as a carrier until the cotton was unloaded.

In *McKinney* v. *Jewett* (90 N. Y. 267, 271) it was held: " The goods are ' awaiting delivery ' only after the duty of the carrier is done, and he is entitled to remain passive ' awaiting ' the action of the consignee." *Texas & Pacific R. Co.* v. *Reiss* (183 U. S. 621) accord.

In *Lee* v. *Erie R. R. Co.* (173 App. Div. 75; affd., 225 N. Y. 727) COCHRANE, J., writes (at p. 77): " The contract of transportation by a common carrier includes placing the cars conveniently for loading and unloading. The incidental consignee can require the car to be placed at a convenient point for unloading and a reasonable opportunity therefor. When the consignee, as in this case, has his own track and requires the car to be placed thereon for unloading it is the duty of the transportation company to comply with his requirement."

The contract of carriage here required the defendant at least to place the car alongside of the plaintiff's leased space on dock D. There was no obligation on the plaintiff to take delivery of the flour at Croxton nearly five miles from the waterfront. The bill of lading itself describes the route as dock D, Weehawken. The practice of the parties was to deliver goods for export at this leased space, to allow the cars to remain unloaded there for a brief interval to permit the giving of ocean shipping instructions and that if such instructions were not given then to unload the cars without any instruction whatever into the leased space at dock D. The freight paid covered the obligation of the carrier actually to place the goods on lighter and transport them to shipboard. Under the terms of the lease while goods were on the leased space the carrier was temporarily exempted from carrier's liability. But nothing therein contained evidences any intention to relieve the carrier of the obligation to transport the goods, not to any point within the territorial limits of the port of New York, but to the definite point, dock D, Weehawken, specifically stated in this bill of lading, recognized by the arrival notice and clearly indicated by the continuous practice of the parties.

To secure exemption under sections 1 and 5 of the bill of lading, the notice of arrival must be given after the property is " at destination or at port of export if intended for export." Under the language describing the route, the phraseology of the arrival notice, and the course of conduct of the parties with respect to the leased space on dock D, it is a reasonable inference that the contract of the parties defined " destination " and " port of export " alike as dock D, Weehawken. The obvious purpose of section 1 was to give the land carrier a temporary respite from its insurance obligation when the land carriage was finished and the goods were at the ultimate point of land carriage awaiting opportunity of shipment. It would violate the expressed intent of the parties to hold that the carrier's respite came before its obligation of land carriage was discharged.

The defendant contends, however, that it is exempted by a clause

in the lease by which the lessee assumes risk of loss by fire " on or about said leased premises arising out of the condition, use or location of the said leased premises or the operation, maintenance or existence of the railroad." These goods were not on or about the leased premises. " On or about " means " anywhere or everywhere upon, but not outside of " the locus (29 Cyc. 1492). The goods here were still in the defendant's cars outside of the leased premises. Further, there is no proof that this fire arose out of the " condition, use or location of the leased premises " or that it arose out of the " operation, maintenance or existence of the railroad." The stipulation does not disclose the cause of the fire.

Verdict directed for plaintiff for $30,737.81, with interest from November 3, 1921. Exception to defendant. Thirty days' stay; sixty days to make a case.