E. G. BECKER, d/b/a Rent-It-Center, and Employer's Commercial Union Insurance Company, Plaintiffs,

v.

CENTRAL TELEPHONE AND UTILITIES CORPORATION et al., Defendants.

No. CIV 73-4003.

United States District Court,
D. South Dakota, S. D.

Oct. 23, 1973.

Deming Smith and Michael F. Pieplow, of Davenport, Evans, Hurwitz & Smith, and Joe W. Cadwell, of Braithwaite & Cadwell, Sioux Falls, S. D., for plaintiffs.

John L. Morgan and John F. Cogley, of Morgan & Fuller, Mitchell, S. D., for defendant Central Telephone & Utilities Corp.

A. D. Sommervold, of Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., for defendant Black & Veatch Consulting Engineers.

Donald J. Porter, of Martens, Goldsmith, May, Porter & Adam, Pierre, S. D., for defendant Hood Corp.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

Plaintiffs recovered judgment against defendants Hood Corporation (a contractor), Central Telephone & Utilities Corporation (Cengas, a utility which distributes gas), and Black & Veatch Consulting Engineers. Plaintiffs recovered for property damage caused by an explosion of gas which leaked from a Cengas pipeline. The pipeline was installed in 1968; the explosion occurred in 1971. All defendants were found causally negligent by a jury.

It was agreed by the parties that the question of indemnity would be tried to the court and three basic issues are here for decision.

1. Whether Black & Veatch has a right to common law indemnity from Hood and Cengas?

2. Whether Cengas has a right to common law indemnity from Black & Veatch and Hood?

3. Whether Cengas has a right to indemnification under its indemnity contract with Hood?

1. *Black & Veatch's claim for common law indemnity from Hood and Cengas.*

The general conception of indemnity is that it lies only in favor of one who is held responsible solely by imputation of law because of his relation to the actual wrongdoer, as where an employer is vicariously liable for the tort of a servant. There is considerable case law, however, to support the proposition that it also lies in favor of one who is himself personally at fault in certain instances. According to Prosser:

. . . it is quite generally agreed that there may be indemnity in favor of one who was under only a secondary duty where another was primarily responsible, as where a municipal corporation, held liable for failure to keep its streets in safe condition, seeks recovery from the person who has created the condition, or a property owner who has permitted it; or an owner of land held liable for injury received upon it sues the wrongdoer who created the hazard. Prosser, Law of Torts, 3d ed. at 280.

The facts in this case show Black & Veatch to have more than a secondary duty to plaintiffs. Their failure to inspect and thereby detect the negligent in-

stallation of pipeline by Hood cannot be considered mere passive negligence. As the South Dakota Supreme Court stated in Degan v. Bayman, 200 N.W.2d 134, 137 (1972),

> An Act of omission as well as one of commission on the part of a joint tortfeasor contributing to the injury may constitute active negligence precluding his recovery of indemnity where he is under an affirmative duty to act.

For a further discussion of active versus passive negligence, the *Degan* Court cited the California case of Cahill Bro., Inc. v. Clementina Co., 208 Cal.App.2d 367, 25 Cal.Rptr. 301, 307 (1962), which states:

> "The difference between primary and secondary liability is not based on a difference in degrees of negligence or on any doctrine of comparative negligence—a doctrine which, indeed, is not recognized by the common law; . . It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person." Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368 (1951).

■ The duty owed to the plaintiffs by Black & Veatch was more than of a derivative nature. Black & Veatch is not like the municipal corporation, cited in Prosser, which was held liable for failure to discover a defect in a street caused by another party and which was trying to recover indemnity from that other party. Although the liability of the municipal corporation is not vicarious liability in a pure sense, the municipal corporation cannot be said to have actively participated in the actions which resulted in the injury. Although they failed to discover the defect, their duty to inspect is very unlike Black & Veatch's duty to the plaintiffs, especially in light of the dangerous substance with which they were dealing. Black & Veatch owed a duty to inspect those pipes before the trenches were filled. Had Black & Veatch exercised their duty in the prop-

er manner the accident could have been prevented—for they were hired for the very purpose of preventing dangerous situations like the one in this case by making Cengas aware of them. This was a high duty owed to the plaintiffs and breach of that duty constituted active negligence as a matter of law, and therefore Black & Veatch are not entitled to indemnity.

In the case of concurrent or joint tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent than the other. Builders Supply, *supra*.

*2. Cengas' claim for common law indemnity from Hood and Black & Veatch.*

■ Cengas is not entitled to common law indemnity as the jury could have based their decision, from the instructions, on conduct by Cengas which would be considered active negligence, that is, failure to maintain the pipelines in a safe condition, or failure to take all reasonable steps to prevent an explosion after notification of the leak.

*3. Cengas' claim for indemnity from Hood based on contract.*

The issue here is: whether a negligent indemnitee (Cengas) has a right to indemnification by a negligent indemnitor (Hood) under an indemnity contract which does not explicitly state that indemnification extends to damages occasioned, at least in part, by the indemnitee's negligence.

This Court holds that Cengas does have a right to indemnification under the facts of this case, and bases its decision on a reading of South Dakota law, especially the interpretation of that law

given by the 8th Circuit Court of Appeals in Associated Engineers, Inc. v. Job, 370 F.2d 633 (8th Cir. 1966).

In the *Job* case, Grand Electric Cooperative, Inc., was the owner seeking indemnity under its contract with Troy Cannon Construction Company, Inc. Both parties had been found negligent toward the plaintiff Job. The contract there contained the following indemnity provision:

> The bidder (Troy) shall hold the owner (Grand) harmless from any and all claims for injuries to persons or for damage to property happening by reason of any negligence on the part of the bidder or any of the Bidder's agents or employees during the control by the Bidder of the Project or any part thereof.

The Court allowed indemnification while agreeing with the general rule that where the indemnitee asserts a contractual right to recover for loss occasioned at least in part by his own negligence, the court must be "firmly convinced" that such an interpretation of the contract reflects the intention of the parties in clear and unequivocal, though not necessarily express, language. *Job, supra* at 650; United States v. Seckinger, 397 U.S. 203, 211, 90 S.Ct. 880, 25 L.Ed. 2d 224 (1970).

In reaching the result in *Job*, the court found five factors to be of significance.

1. The use of the word "any" connoted broad coverage and the court felt that the contract was not restricted to claims produced by the indemnitor's negligence unaccompanied by other causative elements.

2. No inference could be drawn from other provisions in the Grand-Troy contract because none referred to concurrent fault on the part of Grand or to its effect on the liability of Troy.

3. *Job* was not a case in which a negligent indemnitee sought to hold responsible a non-negligent indemnitor.

4. The parties could not have intended by the contract to deprive Grand of quasi-contractual indemnity rights, yet this result would have followed were the contract to be construed as precluding indemnification on the facts of *Job*.

5. "A construction which would not permit indemnity would render the hold harmless clause without meaning or significance. The clause's presence indicates that the parties meant Grand to have something by it which it would not have without it." *Job, supra* 370 F.2d at 650, 651.

The significant portion of the contract in this case reads as follows:

> Contractor shall, at its own cost, settle and discharge all claims made by reason of the acts or omissions of the Contractor, his agents, employees or sub-contractors and indemnify and save harmless the Owner from loss and damage from claims made on account of work done under the contract.

Factors one, three and five from *Job* are certainly relevant to the decision in this case and should be accorded great weight.

Factor 1. Whereas the *Job* provision used the words "any and all claims", "claims" is used here. If anything, the wording of the Cengas-Hood contract is stronger, since the Troy-Grand contract is restricted to "any negligence on the part of the Bidder or any of the Bidder's agents or employees *during the control by the Bidder* of the Project or any part thereof", *Job, supra* at 648, and the Cengas-Hood provision contains no such restriction, encompassing all "claims made on account of *work done* under the contract." (Emphasis added.)

Factor 3. This case, like *Job*, is not a situation in which a negligent indemnitee is seeking to hold responsible a non-negligent indemnitor. Many of the cases cited (both in *Job, supra*, 370 F.2d at 650, and by defendant Hood in its briefs) for the principle of disallowing indem-

**988**

nity involve such sole negligence. See 175 A.L.R. 1, Secs. 18, 32; 41 Am.Jur. Secs. 15, 699; 27 A.L.R.3d Secs. 12, 719; Ocean Acc. & Guar. Corp. v. Jansen, 203 F.2d 682 (8th Cir. 1953); General Acc. F. & L. Assur. Corp., Ltd. v. Finnegan & Burgess, Inc., 351 F.2d 168 (6th Cir. 1965); Whirlpool Corp. v. Morse, 222 F. Supp. 645, 654 (Minn.1963); Batson-Cook Company v. Industrial Steel Erectors, 257 F.2d 410, 411 (5th Cir. 1958); Inman v. Binghamton Housing Authority, 3 N.Y.2d 137, 164 N.Y.S.2d 699, 143 N.E.2d 895, 900 (1957).

Factor 5. As in *Job*, a construction not permitting indemnity would render the indemnity contract meaningless and therefore could not have been the intent of the parties. If *Hood* (the indemnitor) had been solely negligent, there would be no need for a contract as Cengas could have received common law indemnity under a theory of vicarious liability. If *Cengas* (the indemnitee) were solely liable, the vast majority of case law (see above citations) would declare indemnity in that situation against public policy and would require *explicit* language as to the intention of the parties *if* indemnity were held to apply *at all* in such a situation.[1] Thus, the parties, by contracting for indemnity must have "meant (Cengas) to have something by it which it would not have without it;" that is, indemnity when both parties (Hood and Cengas) have been adjudicated negligent.

Factor 2 of *Job* does not relate to this decision as we have no evidence on other provisions of the contract. Factor 4 states that the indemnitee should not be deprived by contract of rights it would have enjoyed quasi-contractually, and since Grand's liability hinged on its fail-

ure to exercise reasonable care in policing the negligent conduct of Troy, common law indemnity would have been allowed (presumably under a theory of secondary or passive negligence).

█ From the Court's instructions in this case, the jury could have found Cengas liable ·(a) based on its non-delegable duty as a supplier of an inherently dangerous product, (b) based on its failure to inspect and remedy the unreasonable practices of its contractor, Hood, (c) based on a failure to maintain pipelines in a safe condition, (d) based on a failure to take all reasonable steps to prevent the explosion after notification of the leak, or a combination of these elements. While any of these several grounds could have determined liability, it has to be assumed that liability was predicated on actively negligent conduct by Cengas which would *disallow* common law indemnity, and present a situation different in that respect from *Job*. Notwithstanding this assumption, Cengas is entitled to indemnity from Hood because the contract expresses such intention in clear and unequivocal terms. To " . . save harmless . . . from claims made on account of work done under the contract" does not set out any requirement that the indemnitee be completely free from negligence. To require more would be to demand explicit language to that effect, and "the South Dakota court itself has indicated that the language need not be express." *Job, supra*, 370 F.2d at 650.

█ Hood asserts that Cengas acquiesced in Hood's negligence, since the jury was instructed:

. . . if you find that there was any defect in such work by Hood which

1. Indeed SDCL 56-3-18 (effective July 1, 1973, and therefore not directly applicable to this case), would deny enforcement of an indemnity contract where the indemnitee was solely liable as against the public policy of South Dakota, and can be said to embody what was already South Dakota common law policy.

The statute could also be seen as an example of the doctrine *expressio unius*, and therefore, indemnity when both parties are negligent, since not expressly mentioned in the statute, is *not* against public policy.

would have been readily apparent to Cengas upon inspection at such time, then you may find that Cengas had notice of any such defect in construction. Any inspection or lack of inspection at such time would be in law the inspection or lack of inspection of Cengas.

Accepting the conclusion that the jury's verdict was based, at least in part, on Cengas' legal knowledge, such knowledge in law does not amount to acquiescence as urged by Hood in its reliance on certain railroad cases. Mo.–Pac. R. R. Co. v. Arkansas Oak Flooring Co., 434 F.2d 575 (8th Cir. 1970); Rouse v. Chic. Rock Island & Pac. R. R., 474 F.2d 1180 (8th Cir. 1973); Pa. R. R. Co. v. Erie Avenue Whse. Co., 302 F.2d 843 (3d Cir. 1962). As stated by the Court in Pa. R. R., *supra* at 848, "one hallmark of such acquiescence is *long continued awareness* of a dangerous situation by the indemnitee . . ." (Emphasis added). "Awareness" denotes something more than imputed legal knowledge and therefore, acquiescence, as contemplated by A.L.I. Restatement of Restitution, Sec. 95, does not apply here.

■ A further issue raised by Hood is whether indemnity extends beyond completion of the construction contract and acceptance of the work by Cengas. This Court holds that it does under the indemnity provision of the contract and the facts of this case.

The contract provides indemnity from "claims made on account of work done under the contract"; it does not provide that Cengas will be indemnified for only those claims arising during the progress of the work. Inman v. Binghamton Housing Authority, 3 N.Y.2d 137, 164 N.Y.S.2d 699, 143 N.E.2d 895, 59 A.L. R.2d 1072, cited by Hood for the proposition that indemnity would not extend beyond completion of the project, is not applicable because (1) the accident there

"did not arise from any defective workmanship" on the part of the indemnitor, and (2) the architects and the builder (indemnitor) "breached no duty and were, therefore, guilty of no negligence . . .". *Inman, supra,* 164 N.Y.S.2d at 705, 143 N.E.2d at 900, 901. *Inman* involved the *sole* negligence of an indemnitee rather than the concurrent negligence of both indemnitor and indemnitee.[2]

*Job* involved an accident during construction and therefore the coverage of the written indemnity provision beyond the construction period was never reached. My research has failed to disclose any cases which would deny recovery under the facts of this case, and the contract itself does not contain any limiting phrase such as "during the control of the Bidder of the Project" (*Job, supra,* 370 F.2d at 648), but rather is all encompassing—"save harmless . . . from claims made on account of *work done* under the contract." (emphasis added)

Two final points for discussion are raised by Hood in their brief. Hood suggests that Degen v. Bayman, S.D., 200 N.W.2d 134, and Highway Construction Company v. Moses, 483 F.2d 812 (decided Sept. 5, 1973), in interpreting *Degen*, signify a shift away from *Job* in South Dakota judicial policy on indemnity. While I agree those cases may signify further development in common law indemnity principles, both those cases involve *common law* indemnity only and have no significance on *Job* standards concerning written indemnity contracts.

Finally, Hood asserts that the construction of an indemnity contract by the Wisconsin Supreme Court in Young v. Anaconda American Brass Co., 43 Wis.2d 36, 168 N.W.2d 112 (1969), is a forecast of how the South Dakota Supreme Court will construe a similar indemnity con-

---

2. South Carolina Electric & Gas Co. v. Utilities Construction Co., 244 S.C. 79, 135 S.E. 2d 613 (1964), cited by Cengas, does not really apply either, for while it upheld reimbursement to the indemnitee by the indemni-

tor four years after completion of the job, the Court there found the indemnitee only guilty of "legally imputed" or passive negligence, a fact we cannot assume in this case.

tract. I disagree. Based on prior Wisconsin law (Algrem v. Nowlan, 37 Wis.2d 70, 154 N.W.2d 217, 1967), the Supreme Court in *Young* held indemnity will apply when there is concurrent negligence only when "the indemnity contract by *express* provision (emphasis added) and strict construction so provides." *Young, supra,* 168 N.W.2d at 122. *Job* specifically states that "the South Dakota court has indicated that the language need not be express." *Job, supra,* 370 F.2d at 650.

■ Cengas is also entitled to recover reasonable attorney fees from Hood under the indemnity contract. Peter Kiewit Sons' Co. v. Summit Construction Co., 422 F.2d 242 (8th Cir. 1969); 41 Am.Jur.2d Sec. 36. This does not include services rendered Cengas in establishing its right to indemnity. General Electric Co. v. Mason & Dixon Lines, Inc., 186 F.Supp. 761, 766 (1960).

In summary, the following determinations are made by this Court:

(1) Black & Veatch was actively negligent in its failure to inspect the negligently installed pipeline and is therefore not entitled to common law indemnity from either Hood or Cengas.

(2) Cengas is not entitled to common law indemnity from either Hood or Black & Veatch since its negligence could certainly have been adjudged active by the jury in its verdict.

(3) Cengas is entitled to indemnification, including attorney fees and cleanup costs from Hood under the indemnity contract between the two parties.

The foregoing constitutes the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure.

Counsel for the plaintiffs and for defendant Cengas are directed to prepare a judgment in accordance with this memorandum decision for the signature of the Court.