E. G. BECKER, d/b/a Rent-It-Center, et al., Appellees,

v.

BLACK & VEATCH CONSULTING ENGINEERS, Appellant.

E. G. BECKER, d/b/a Rent-It-Center, et al., Appellees,

v.

HOOD CORPORATION, Appellant.

Nos. 73–1912, 73–1918.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1974.

Decided Dec. 31, 1974.

A. D. Sommervold, Sioux Falls, S. D., made argument for Black & Veatch Consulting Engineers.

Donald J. Porter, Pierre, S. D., made argument for Hood Corporation.

John L. Morgan, Mitchell, S. D., made argument for Central Telephone & Utilities Corp.

Before BRIGHT, STEPHENSON, and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

In these consolidated appeals we consider the indemnity claims of two defendants found liable with a third defendant[1] for injuries sustained in a gas pipeline explosion.

In the jury trial below, plaintiffs named as defendants the public utility, Central Telephone & Utilities Corporation (Cengas); the contractor which had installed the pipeline, Hood Corporation; and the consulting engineer for the installation, Black & Veatch Consulting Engineers.[2] The defendants filed cross-claims against each other for indemnity. The jury returned a verdict against all defendants in the amount of $90,000 and pursuant to special interrogatories apportioned liability among the defendants as follows: Cengas–45%; Hood–35%; Black & Veatch–20%. Since the trial court reserved resolution of the indemnity claims to itself pursuant to stipulation, such claims were not submitted to the jury.

Following the verdict, the District Court (1) denied Black & Veatch's claim of common law indemnity against Cengas, (2) rejected Cengas' claim of common law indemnity against Hood, but (3) awarded Cengas full indemnity against Hood under the construction contract. Hood and Black & Veatch appeal from the adverse rulings. District Judge Fred

---

1. S.D.C.L. 15–8–15 (1967) authorizes contribution between joint tort-feasors.

2. Diversity jurisdiction is founded on 28 U.S.C. § 1332.

J. Nichol's opinion is reported at 365 F.Supp. 984 (D.S.D.1973).

Cengas, a public utility with its principal place of business in Lincoln, Nebraska, operates a natural gas distribution system in Sioux Falls, South Dakota. In November, 1968, Cengas engaged Hood Corporation, a California based pipeline construction company, to install a four mile section of pipeline in Sioux Falls. Cengas also retained Jim Moore, an employee of Black & Veatch Consulting Engineers, to inspect Hood's work for compliance with the contract. Black & Veatch had been the engineer and Hood the contractor on another Cengas Sioux Falls project that was completed immediately prior to the project here in question.

The new 12-inch pipe was laid across and over an existing 4-inch cast iron gas line at the intersection of Tenth Street and Blaine Avenue. While this procedure is not unusual, there was evidence that neither the space between the pipelines nor the clearance below street level met contract requirements. The project was completed and accepted with the approval of Moore and H. A. Hovik, Cengas' Sioux Falls plant manager, on November 23, 1968.

On the morning of December 16, 1971, persons in the area of Tenth and Blaine noticed a strong gas odor. Two persons notified Cengas by telephone at approximately 9:30 a.m. and Elwin Leffers, an investigator for the company, arrived on the scene at about 10:10 a.m.[3] Leffers noted the strong gas odor and decided that the situation required immediate attention because of the probability that a gas main under the street was leaking or had broken. He made a radio call to the company's crew trucks, and when none of them responded he directed the dispatcher to send a crew to the area as soon as possible. Leffers then went to a Cengas Service Center to check the maps to determine the location of gas lines in the area. He was on the scene for approximately five to eight minutes. At 10:35 a.m., prior to the arrival of any other Cengas' personnel, a gas explosion occurred in plaintiff's building at the corner of Tenth and Blaine when an employee turned on an electric drill. The cause of the explosion was subsequently determined to be ignition of combustible gas leaking from the 4-inch pipe, which had broken under the weight of the 12-inch line. Except for a small piece of rubber tire, the 12-inch pipe was found resting directly on top of the 4-inch pipe.

On these facts the court submitted the case to the jury for its determination of the negligence of the respective defendants on the following theories: (1) that Hood failed to properly install the crossover; (2) that Black & Veatch failed to inspect and therefore discover the defective installation; (3) that Cengas failed to inspect and discover the defective installation; (4) that Cengas failed to inspect and maintain the pipeline system during the three-year period between completion of the project and the explosion; and (5) that Cengas failed to respond properly to the emergency on the day of the explosion. The jury found all the defendants causally negligent and, as previously noted, apportioned their liability as follows: Cengas—45%; Hood—35%; Black & Veatch—20%.

These appeals are addressed to certain of the District Court's orders on the indemnity issues following the jury verdict. Black & Veatch appeals from that portion of the decision denying it indemnification on the ground that its failure to inspect was merely passive negligence (No. 73–1912). Hood appeals from the holding that Cengas was entitled to full indemnity under the contract notwithstanding its own negligence which contributed to the cause of plaintiff's injury (No. 73–1918).

I.

*Indemnity Claim of Black & Veatch*

■ In No. 73–1912, we find no merit in Black & Veatch's argument that its

---

**3.** The two witnesses' testimony placed the time at around 9:30 a.m. but Cengas' records showed the first call was received at 10:00 a.m.

failure to inspect the crossover was merely passive negligence. When it addressed this issue, the District Court noted that while in some circumstances a failure to inspect may constitute mere passive negligence, here Black & Veatch had been employed for the express purpose of inspecting Hood's work. It ruled that this employment created a high duty on the part of Black & Veatch, the breach of which constituted active negligence as a matter of law. 365 F.Supp. at 985–986. We agree.

Because Black & Veatch's negligence was active, it was not entitled to common law indemnity under South Dakota law. *See* Highway Construction Co. v. Moses, 483 F.2d 812 (8th Cir. 1973); Rogers v. Black Hills Speedway, Inc., S.D., 217 N.W.2d 14 (1974); Degen v. Bayman, 86 S.D. 598, 200 N.W.2d 134 (1972). The judgment under No. 73–1912 is affirmed on the basis of Judge Nichol's well-reasoned opinion.

## II.

### Cengas' Indemnity Claim

In No. 73–1918, Hood challenges a number of the trial court's rulings and asserts that (1) there can be no contractual indemnity between a utility and a contractor when both of them were causally negligent during the term of the contract, (2) the indemnity provisions of the contract are not applicable to the circumstances giving rise to this case, and (3) the contract is contrary to public policy and void because it serves to relieve a public utility of all responsibility for its own negligent conduct.[4]

We note at the outset that this case presents issues of contractual indemnity rather than common law indemnity. As we said in Northern Natural Gas Co. v. Roth Packing Co., 323 F.2d 922, 929 (8th Cir. 1963):

[W]e are not confronted with the problem of whether the negligence of the respective parties was active or passive, or primary or secondary. In contractual indemnity, liability is controlled by the provisions of the contract.

In Associated Engineers, Inc. v. Job, 370 F.2d 633 (8th Cir. 1966), cert. denied, 389 U.S. 823, 88 S.Ct. 59, 19 L.Ed.2d 77 (1967), we addressed many of the same issues presented by this case and held that under the terms of a construction contract an indemnitee was entitled to contractual indemnification from a negligent indemnitor, its own negligence notwithstanding, so long as the parties' intention to that effect was expressed in clear and unequivocal terms in the contract.

Herein, the indemnity clause of the contract between Cengas and Hood provides:

20. Claims and Damages

\* \* \* \* \* \*

Contractor shall, at his own cost, settle and discharge all claims made by reason of the acts or omissions of the Contractor, his agents, employees, or sub-contractors and indemnify and save harmless the Owner from loss and damage and from claims made on account of work done under this contract.

This clause manifests a clear undertaking by Hood not only to protect Cengas against claims resulting from acts or omissions of the contractor, but also to indemnify it against loss or claims made "on account of work done under this contract." This unequivocal undertaking is limited by its terms only to work done

---

4. Hood also contends that Cengas acquiesced in Hood's negligence. This argument is without merit and further comment would merely be repetitious of Judge Nichol's well-reasoned analysis of this issue. 365 F.Supp. at 988–989. While Hood argues that Cengas was not entitled to attorney's fees, this issue is wholly dependent on the favorable disposition of other issues since Cengas is entitled to reasonable attorney's fees for defending allegations of negligence against it insofar as the alleged negligent acts are covered in the indemnity contract. Peter Kiewit Sons' Co. v. Summit Construction Co., 422 F.2d 242 (8th Cir. 1969). In light of our disposition of these other issues, further discussion of this question is unnecessary.

under the contract, and it is broad enough to include claims founded in part upon Cengas' negligence in connection with such work.

We must therefore examine the contract to determine (A) whether its indemnity clause extends beyond completion of the contract and (B) whether it indemnifies Cengas for those of its own negligent acts subsequent to completion and acceptance of the project which contributed to cause plaintiff's injury.

## A.

■ In construing any particular provision of a contract, it is necessary to examine the contract as a whole, Eberle v. McKeown, 83 S.D. 345, 159 N.W.2d 391 (1968); Moriarty v. Tomlinson, 58 S.D. 431, 235 N.W. 363 (1931). An indemnity contract is to be construed according to the clear and unequivocal expression of the parties' intent embodied in the ordinary meaning of the words used. Associated Engineers, Inc. v. Job, *supra*; Schull Construction Co. v. Koenig, 80 S.D. 224, 121 N.W.2d 559 (1963). Any doubts are to be resolved in favor of the indemnitor. *Id.*

■ Given these general principles, Hood argues that certain other provisions of the contract, relating to payments, bond and insurance, demonstrate that the indemnity clause was applicable only until the contract was fully performed and the project accepted.[5] We disagree.

■ The contract, when read as a whole, places no express time limitation on Hood's obligation to indemnify and save harmless Cengas from any loss, damage or claim made on account of the work done under the contract. Nor do we find any indication in the South Dakota Constitution, statutes or case law which would render such a contract void as violative of public policy if the parties intended that Cengas should be indemnified under the circumstances.[6] We

5. Hood places primary emphasis on the following provisions:

   20. Claims & Damages
      *    *    *    *    *    *

   In the event the Owner is called upon to pay any claims resulting from work performed under this contract, Contractor will pay Owner in full for any such claims or, at the option of the Owner, such sums so paid by Owner may be deducted from any moneys due or payable to Contractor under the terms hereof.

      *    *    *    *    *    *

   22. Payment
      *    *    *    *    *    *

   If at any time there shall be any evidence of any lien or claims for which, if established, the Owner might become liable and which is chargeable to the Contractor, it is agreed that the Owner shall have the right to retain out of any payment then due or thereafter to become due, an amount sufficient to completely indemnify the Owner against such lien or claim. Should there prove to be any such lien or claims after all payments are made, the Contractor shall refund to the Owner all moneys the latter may be compelled to pay in discharging any such lien or claim.

   23. Bond

   The Contractor will be required to furnish a bond satisfactory to the Owner in the full amount of the contract for the full protection of the Owner against any loss or damage that may be occasioned by mechanic's liens, or other liens, or by loss or claims on account of labor furnished and for the due and faithful performance and fulfillment by the Contractor of all and every one of the terms, provisions, covenants, agreements and all conditions complied with. THE OWNER WILL REIMBURSE THE CONTRACTOR FOR THE COST OF THE BOND AT THE COMPLETION OF THE WORK.

   24. Insurance
      *    *    *    *    *    *

   The policies of insurance shall be in form and in all other respects satisfactory to the Owner. Evidence that such insurance is in force shall be submitted to the Engineer immediately upon the signing of this contract by presenting the policies to the Engineer for inspection or by furnishing to the Engineer the insurance companies' usual form of certificates. Said policies or certificates must show, among other things, that the insurance will not be cancelled or lapsed during the progress of work covered by this contract without first giving ten (10) days' notice in writing to the Owner.

6. Cengas is governed by the same standards governing common carriers, S.D.C.L. 49-2-2 (1967). A common carrier may limit its obli-

therefore hold that the contractual obligation of Hood to indemnify Cengas was not limited to claims arising prior to completion of the contract.[7]

## B.

We must next consider whether the indemnity clause was intended to include an occurrence of Cengas' negligence subsequent to the acceptance of the completed project and independent of the contract.

■ The contract states that Hood will "indemnify and save harmless [Cengas] from loss and damage and from claims made on account of *work done under this contract*." (Emphasis added.) Under this provision, Cengas was to be indemnified to the extent that its own negligence related to work done under the contract (*e. g.*, the failure to inspect and discover the defective crossover). However, Hood undertook no continuing obligation to protect Cengas from its own *independent* negligent conduct.[8]

gations by special contract, S.D.C.L. 49–2–7 (1967), but may not be indemnified for willful, wanton or fraudulent conduct, S.D.C.L. 49–2–9 (1967). Neither Title 49 of South Dakota Compiled Laws, covering "Public Utilities and Carriers," nor Chapter 41 on Natural Gas Pipeline Safety in the Title on "Public Health and Safety" indicates an express public policy which would forbid indemnification for the acts here in question. In considering Hood's public policy argument in this case, we are guided by the general principles expounded in Bartron v. Codington County, 68 S.D. 309, 2 N.W.2d 337 (1942):

> Public policy is that principle of law which holds that no person can lawfully do that which has a tendency to be injurious to the public or against the public good.
>
> *   *   *   *   *   *
>
> Until firmly and solemnly convinced that an existent public policy is clearly revealed, a court is not warranted in applying the principle under consideration. It has been well said, 'that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare.' Baltimore & Ohio Southwestern Railway Co. v. Voigt, 176 U.S. 498 [20 S.Ct. 385, 387, 44 L.Ed. 560] *   *   *.

*Id.* at 322–323, 2 N.W.2d at 343–344. *See also* Schurr v. Weaver, 74 S.D. 378, 53 N.W.2d 290 (1952). The only indication that such a contract is not favored appears in S.D.C.L. 56–3–18 (Supp.1973), noted at note 7 *infra,* which provides:

> 56–3–18. Indemnity agreement void as to liability for negligence in construction, repair or maintenance of structure or equipment.—A covenant, promise, agreement or understanding in, or in connection

with or collateral to, a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenance and appliance, including moving, demolition and excavating connected therewith, purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee, is against the policy of the law and is void and unenforceable.

It cannot be said that the acts of negligence involved here constitute "sole" negligence as that term is used in the statute.

7. In reaching this conclusion, we emphasize that we are not here concerned with indemnification by an innocent indemnitor for the sole negligence of the indemnitee. As Judge Nichol noted, 365 F.Supp. at 988 n. 1, any contract so construed would be contrary to the public policy of South Dakota and void. S.D.C.L. 56–3–18 (1967).

In an unreported district court opinion, Auto Owners Mutual Ins. Co. v. Northern Indiana Public Service Co., Civil Nos. 1828, 1832, 1847, 1848 (N.D.Ind., April 17, 1968), aff'd on other grounds, 414 F.2d 192 (7th Cir. 1969), the district court in dicta suggests that the absence of express language extending the indemnity clause beyond the term of the contract bars such an extension. Neither Judge Nichol nor the parties discovered a single case which would require such a restrictive reading and our own research has disclosed none. There is no justification for reading into the second clause of the instant indemnity provision the phrase "during the control by the Bidder," which appeared in the contract in Associated Engineers, Inc. v. Job, 370 F.2d 633 (8th Cir. 1966), cert. denied, 389 U.S. 823, 88 S.Ct. 59, 19 L.Ed.2d 77 (1967).

8. See note 6 *supra.*

Therefore, if Cengas acted negligently after being notified of the leak and its actions contributed to the cause of plaintiff's injury, Cengas is not entitled to indemnity under the terms of the contract since such negligence had nothing to do with "work done" under the contract.

■ At trial, the jury was instructed to determine (1) whether any defendant was negligent and, if more than one were negligent, (2) to apportion liability among them. Under the issues submitted in the charge, Cengas might have been found liable for several alleged breaches of duty, some of which were covered by the indemnity agreement and some not.[9] Because it is impossible for us to determine from the record the nature of the negligence upon which the jury based its assignment of 45% of the liability to Cengas, we must remand for further proceedings.

The stipulation reserving all questions of indemnity to the trial court is not a part of the record before this court and we cannot ascertain how this factual question must be resolved on remand. The District Court must determine whether Cengas' liability rested in whole or in part upon its independent acts of negligence subsequent to the completion and acceptance of the project. If it so finds, it will deny indemnity. *See* Kessler v. Bowie Machine Works, Inc., 501 F.2d 617 at 622 (8th Cir. 1974). Otherwise, it will grant indemnity. Such findings shall be either by reference to the indemnity stipulation or as the court may otherwise deem appropriate in a manner consistent with this opinion.

Remanded.

---

**9.** The District Court stated, with respect to the nature of the jury's verdict, that:

From the Court's instructions in this case, the jury could have found Cengas liable (a) based on its non-delegable duty as a supplier of an inherently dangerous product, (b) based on its failure to inspect and remedy the unreasonable practices of its contractor, Hood, (c) based on a failure to maintain pipelines in a safe condition, (d) based on a failure to take all reasonable steps to prevent the explosion after notification of the leak, or a combination of these elements.
365 F.Supp. at 988.