**CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY**

v.

**V & R SAWMILL, INC. and Custer Lumber Company.**

**Civ. No. 78–5066.**

United States District Court, D. South Dakota.

Nov. 19, 1980.

Arlo D. Sommervold, Sioux Falls, S.D., for plaintiff.

Thomas G. Fritz, Rapid City, S.D., for defendants.

## MEMORANDUM OPINION

BOGUE, Chief Judge.

This case deals with indemnity clauses contained in agreements entered into between Plaintiff and Defendant V & R Sawmill (hereinafter referred to as V & R).[1] In December, 1965, Plaintiff leased property to V & R upon which V & R operated a wood chip loading facility near Plaintiff's railroad tracks in Hermosa, South Dakota. The following year, a licensing agreement was entered into between Plaintiff and V & R. This agreement covered the use of a chip loading apparatus which extended over a portion of Plaintiff's track. During 1971, all of the property covered by the lease agreement, except for a fifty foot right of way, was sold to V & R. The fifty foot right of way continued to be leased to V & R.

Both the lease and the license contain indemnification clauses. The applicable provision in the lease provides as follows:

> Lessee also agrees to indemnify and hold harmless the Lessor against loss, damage or injury to the person or property of the Lessee, or any other person, while on or about the leased premises. . . .

The indemnification clause contained in the licensing agreement provides the following:

> It is understood by the Licensee that said facility is subject to and may increase the dangers and hazards of the operation of the railroad of the Railway Company, and that this license is subject to all risks thereof. Therefore, and as a material consideration to the Railway Company for entering into this license and without which the Railway Company will not enter into same, the Licensee agrees to assume and pay for all loss or damage to

---

1. Defendants V & R Sawmill and Custer Lumber Co., Inc. were consolidated in November, 1974 and are considered to be one and the same for purposes of this action.

property whatsoever, and injury to or death of any person, or persons whomsoever, including all costs and expenses incident thereto, however arising from or in connection with the existence, construction, maintenance, repair, renewal, reconstruction, operation, use or removal of said facility . . .; and the Licensee forever indemnifies the Railway Company against and agrees to save it harmless from any and all claims, demands, law suits or liability for any such loss, damage, injury and death, costs and expenses, even though the operation of the Railway Company's railroad may have caused or contributed thereto.

On October 20, 1975, Marvin Houk (hereinafter referred to as Houk), an employee of V & R, was struck by a train belonging to Plaintiff while operating a front end loader in the course of his employment at the chip loading facility. The accident occurred at the intersection of the railroad tracks and Hermosa's Main Street at a location a short distance northwest of the areas covered by the lease and licensing agreements.

Houk received extensive injuries as a result of the collision and brought suit against Plaintiff alleging the train was travelling too fast and that it had failed to sound any warning devices prior to the collision. Plaintiff alleged contributory negligence on Houk's part. Before commencement of the trial Plaintiff settled with Houk for $50,-000. Prior to this settlement, Plaintiff never contacted Defendants with regard to the Houk lawsuit or tendered the defense of the suit to them. Plaintiff now seeks to recover the amount of the Houk settlement plus $18,900.37 in attorney's fees and costs on the basis of the indemnification agreements. Defendants' contention that they are not required to indemnify Plaintiff can be categorized into three basic arguments.

1. The accident did not occur on property covered by either the lease or licensing agreements.

2. The indemnification agreements were not intended to protect Plaintiff from its own negligence.

3. Even if the agreements were meant to protect Plaintiff from its own negligence, they are invalid under South Dakota law as violative of public policy.

■ In regard to Defendants' first argument, the lease agreement provides that Plaintiff will be indemnified for damage resulting to a person "while on or about the leased premises." The licensing agreement provides indemnification for claims "arising from or in connection with the existence, construction, maintenance, repair, renewal, reconstruction, operation, use or removal of said facility."

As noted earlier, the accident took place outside the actual property covered by the lease and license. This court must determine if the agreements were meant to extend beyond the boundaries of the property covered by the agreements. In regard to the lease agreement, the words "on or about" are the key. Few cases have interpreted this clause in the context with which we are concerned in this case. A few cases suggest that the words "on or about" should be interpreted restrictively, which would seem to indicate that, in this case, the phrase would be interpreted so as to restrict the coverage of the indemnity clauses to the actual area covered by the lease agreement. *People v. Clark*, 70 Ill. App.3d 698, 27 Ill.Dec. 144, 388 N.E.2d 1107 (1970); *Pillsbury Flour Mills Co. v. Erie R. Co.*, 127 Misc. 466, 216 N.Y.S. 486 (1926); *Thompson v. Banks*, 43 N.H. 540 (1862). However, it has been held in another case that the words "on or about" should be liberally construed. *Bullock v. Potashnick*, 162 S.W.2d 607 (Mo.1942). This court does not argue with those courts which have held the phrase "on or about" to extend only to the area actually covered by the property agreement involved. In this case, however, it appears to the court that the indemnification clause contained in the lease agreement was intended to apply to incidents occurring as a direct result of the operation of the chip loading facility, even though such occurrence happened outside the confines of the leased premises.

Likewise, it appears the licensing agreement was meant to cover incidents occurring outside the area covered by that agreement. In *Seymour v. Chicago and Northwestern Railway Co.*, 255 Iowa 780, 124 N.W.2d 157 (1963), Chicago and Northwestern entered into a licensing agreement with a paving contractor. The agreement covered certain facilities used for handling cement, sand and gravel. The licensing agreement contained an indemnification clause which used the exact same language as was used in the indemnification clause contained in the license in the case at bar. Plaintiff was injured when his car was struck by one of Chicago and Northwestern's trains at a railroad crossing located near, but not within, the area covered by the license. The trial court found in favor of the indemnitor, in part because the accident occurred outside the area covered by the license and was not, therefore, part of the contract. The Iowa Supreme Court reversed. The Court found that the accident had been caused in part by railroad cars being placed near the licensed facility which obstructed Plaintiff's view. The Court stated:

> It is inescapable that the injuries sustained here arose "in connection with" the use and operation of the defendant's business. The cars were placed on the track because of that use and operation, and clearly in connection therewith." *Id.* at 161.

The Court also noted that, "The words 'in connection with' are broad, and have been so construed by the courts." *Id.*

In the instant case, the work being performed by Houk certainly arose in connection with the operation of the licensed facility. Therefore it appears to the court that the indemnification clause contained in the licensing agreement was meant to provide coverage in this instance. *See also Jacksonville Terminal Co. v. Railway Express Agency, Inc.*, 296 F.2d 256 (5th Cir. 1961); *Kokusai Kisen Kabushiki Kaisha v. Columbia Stevedoring Co.*, 23 F.Supp. 403 (S.D.N.Y.1938).

Defendants' second main contention is that these indemnity agreements were not intended to protect Plaintiff from the consequences of its own negligence. It is well established that common carriers cannot be indemnified for their own negligence. *Santa Fe, Prescott & Phoenix Railway Co. v. Grant Brothers Construction Co.*, 228 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787 (1913). However, where a common carrier is acting in a private capacity, such as in this case, it can contract to be indemnified against its own negligence. S.D.C.L. 49–2–7; *Grant Brothers, supra; Westre v. Chicago, Minneapolis & St. Paul Railway Co.*, 2 F.2d 227 (8th Cir. 1924); *Meuer v. Chicago, Minneapolis & St. Paul Railway Co.*, 5 S.D. 568, 59 N.W. 945 (1894).

The general rule, which has been adopted in South Dakota and elsewhere in the Eighth Circuit, holds that to relieve a party of the consequences of its own negligence the language of the agreement must be clear and unequivocal. *Becker v. Black & Veatch Consulting Engineers*, 509 F.2d 42 (8th Cir. 1974); *Associated Engineers, Inc. v. Job*, 370 F.2d 633 (8th Cir. 1966); *Bartak v. Bell–Galyardt & Wells, Inc.*, 473 F.Supp. 737 (D.S.D.1979), *rev'd on other grounds*, 629 F.2d 523 (8th Cir. 1980); *Schull Construction Co. v. Koenig*, 80 S.D. 224, 121 N.W.2d 559 (1963). There is a split of authority on the question of whether the term "negligence" must actually appear in the agreement in order to relieve a party of the consequences of its own negligence. 41 Am.Jur.2d, *Indemnity*, § 15; 14 A.L.R.3d 446, 453. The key to interpreting an indemnity agreement is the intention of the parties. *United States v. Seckinger*, 397 U.S. 203 (1970); *Becker, supra; Bartak, supra; Moriarty v. Tomlinson*, 58 S.D. 431, 235 N.W. 363 (1931). A number of cases have found the intent to indemnify against a party's negligence, even though the term "negligence" is not actually used, where such intent is clearly expressed. *See e. g. Hysell v. Iowa Public Service*, 534 F.2d 775 (8th Cir. 1976); *Becker, supra*, (interpreting South Dakota law); *Seaboard Coast Line Railroad Co. v. Tennessee Corp.*, 421 F.2d 970 (5th Cir. 1970); *Miller and Co. of Bir-*

*mingham v. Louisville and Nashville Railroad Co.*, 328 F.2d 73 (5th Cir. 1964).

■ In regard to the lease agreement, it appears to this court that the language used is not clear enough to establish that the parties intended to indemnify Plaintiff for its own negligence. Somewhat similar language was employed in an indemnification agreement in the case of *Gimbel Brothers, Inc. v. William H. Vanderherchen, Inc.*, 468 F.2d 597 (3rd Cir. 1972). In denying Defendants' request for indemnification the court stated:

> "The language here, while broad, does not specifically state that Vanderherchen is to be indemnified against liability arising out of Vanderherchen's own negligence. Consequently, we hold that the clause is not an effective defense to the allegations in Gimbel's complaint." *Id.* at 599.

■ On the other hand, it appears the language in the licensing agreement is clear enough to establish the intent to provide Plaintiff protection against its own negligence. First of all, the clause begins with a statement recognizing the increased hazards caused to Plaintiff by the existence of the wood chip plant. Secondly, the clause concludes with the phrase, "even though the operation of the Railway Company's railroad may have caused or contributed thereto." *Chicago & Northwestern Railway Co. v. Rissler*, 184 F.Supp. 98 (D.Wyo. 1960), involved an indemnity agreement entered into by the Plaintiff railroad and Defendant. The agreement was almost identical to the one contained in the license in the instant case. The Wyoming District Court determined that even though the term "negligence" was not used, the intention to indemnify the railroad against its own negligence was clearly conveyed and Defendant was therefore found to be obligated to indemnify Plaintiff. This court finds that the language used in the licensing agreement clearly and unequivocally established the parties' intention to indemnify Plaintiff against liability resulting from its own negligence.

2. S.D.C.L. 49-25-2 was repealed by Session Law 1979, chap. 307, § 91.

■ That brings us to the final question—whether the indemnification agreement is void under South Dakota law. Plaintiff asserts the indemnification agreement is invalid under S.D.C.L. 53-9-3 and S.D.C.L. 56-3-18. To deal with this issue a slight digression is necessary. As noted earlier, Plaintiff never tendered to the Defendants the defense of the suit brought by Houk. To sustain an indemnity claim against the indemnitor, the indemnitee must prove legal liability to the injured party unless the defense has been tendered and refused by the indemnitor. S.D.C.L. 56-3-13; *Missouri Pacific Railroad Co. v. Arkansas Oak Flooring Co.*, 434 F.2d 575 (8th Cir. 1970); *Tankrederiet Gefion A/S v. Hyman-Michaels Co.*, 406 F.2d 1039 (6th Cir. 1969); *Chicago, Rock Island & Pacific Railroad Co. v. Dobry Flour Mills*, 211 F.2d 785 (10th Cir. 1954); *Boston & Maine Railroad v. Howard Hardware Co.*, 123 Vt. 203, 186 A.2d 184 (1962). Therefore, in this case it is necessary that Plaintiff prove its legal liability to Houk in order to recover indemnity from Defendants.

■ The evidence at trial was conflicting as to the cause of the accident. Houk testified that the main cause of the accident was the failure of the train to sound its bell or whistle prior to the collision. This testimony was corroborated by a witness who was near the accident scene on the day of the accident. The engineer and brakeman on the train and another witness testified that the train did sound its whistle and/or bell prior to the accident. There was no testimony about the speed of the train. Therefore, from the evidence introduced, the only basis upon which Plaintiff could be considered to be liable to Houk would be the failure of the train to sound a warning device prior to reaching the intersection.

At the time this accident occurred, S.D. C.L. 49-25-2 [2] provided as follows:

> A bell . . . or a steam whistle . . . shall be rung or whistled at the distance of at least eighty rods from the place where

the railroad shall cross, on the same level, any other road or street, and be kept ringing or whistling until it shall have crossed such road or street, under a penalty of fifty dollars for every neglect, to be paid by the corporation owning the railroad, and such corporation shall also be liable in damages for all injury which shall be sustained by any person by reason of such neglect.

Therefore, Plaintiff would have been liable as a matter of law for any damages occurring to Houk if the cause of the accident was the train's failure to sound its bell or whistle.

S.D.C.L. 53–9–3 provides:

All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own . . . violation of law whether willful or negligent, are against the policy of the law.

Defendant asserts that this statute makes the indemnification agreement void as against public policy because the basis for Houk's action against Plaintiff was Plaintiff's negligent violation of S.D.C.L. 49–25–2. Although there are no South Dakota cases on point, Defendants' argument is well taken. The evidence elicited at trial showed that the only basis upon which Plaintiff could be held liable to Houk was Plaintiff's negligent violation of S.D.C.L. 49–25–2. Thus, it appears that S.D.C.L. 53–9–3 would then act to make the indemnification agreement void as against public policy in this case.

Defendant also cites S.D.C.L. 56–3–18 as support for its position that the indemnification agreement is void in this instance. That statute states:

A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenance and appliance, including moving, demolition and excavating connected therewith, purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee, is against the policy of the law and is void and unenforceable.

This statute was dealt with in *Becker, supra.* In that case, Defendant Cengas hired Defendant Hood Construction to install a gas pipeline. Cengas also hired an employee of Defendant Black & Veatch Consulting Engineers to inspect the work done by Hood. The pipeline subsequently exploded due to faulty installation. At trial, the jury found all three defendants negligent. Cengas then asked for Hood to indemnify it on the basis of an indemnity agreement. Hood, relying on S.D.C.L. 56–3–18, asserted that the indemnity agreement was violative of public policy. In rejecting this argument, the Eighth Circuit Court of Appeals stated:

It cannot be said that the acts of negligence involved here constitute "sole" negligence as that term is used in the statute.

In reaching this conclusion, we emphasize that we are not here concerned with indemnification by an innocent indemnitor for the sole negligence of the indemnitee. . . . [A]ny contract so construed would be contrary to the public policy of South Dakota and void. *Id.* at p. 47, n. 6 & 7.

Furthermore, the District Court decision in the same case noted:

Indeed S.D.C.L. 56–3–18 . . . would deny enforcement of an indemnity contract where the indemnitee was solely liable as against the public policy of South Dakota. . . . *Becker v. Central Telephone & Utilities Corp.,* 365 F.Supp. 984, 988, n. 1.

The situation which was not present in *Becker*—indemnification by an innocent indemnitor for the sole negligence of the indemnitee—is present in this case. The only negligence upon which an award to Houk could be based is the negligence of Plaintiff. Therefore, S.D.C.L. 56–3–18 would appear to render the indemnification agreement void in this case.

It is the conclusion of this court that the indemnification agreement in question is

void as against public policy under the facts of this case. Therefore, Plaintiff will be denied recovery.

The foregoing constitutes this court's findings of fact and conclusions of law.